In re D. F. HERLEHY CO.

(District Court, N. D. New York. January 22, 1918.)

1. BANKRUPTCY ⬅88(2)—INTERVENTION—ANSWER—RIGHT TO FILE—NOTICE.
An ex parte order, allowing one creditor of an alleged bankrupt to answer an involuntary petition filed by others after the time to file such answer has expired, should not be granted, but notice should be required to be given to a creditor, who had come into the proceeding and become an actual party, but who filed no answer and did not object to the sufficiency of the petition.

2. BANKRUPTCY ⬅88(2)—PROCEEDINGS—ANSWER.
Bankr. Act July 1, 1898, § 18b, c. 541, 30 Stat. 551, as amended by Act Feb. 5, 1903, c. 487, § 6, 32 Stat. 798 (Comp. St. 1916, § 9602), declares that the bankrupt or any creditor may plead to the petition in involuntary bankruptcy within five days after the return day, or within such further time as the court may allow, while section 59f declares that creditors other than original petitioners may at any time enter their appearance and join in the petition, or file an answer and be heard in opposition to the prayer of the petition. An involuntary petition was filed on July 17th. On July 30th a creditor filed an answer denying insolvency, and the commission of any act of bankruptcy, and an attorney for a second creditor filed a petition and obtained an order to show cause why the issue framed by the answer should not be tried or the petition dismissed. Prior to the filing of such petition, the attorney for the second creditor, representing certain creditors, had recovered default judgments against the bankrupt, on which execution had been issued and levies made. On return and hearing of the order to show cause, no objection was raised to the sufficiency of the petition, and the court ordered that the answer interposed, and which had been referred to the referee, be proceeded with. Thereafter the bankrupt offered a composition, and the first answering creditor withdrew his answer, whereupon the second creditor by its attorney on October 22d applied ex parte for an order permitting it to intervene and file an answer. *Held*, that it was improper, after that lapse of time, to allow the second creditor to answer the petition, section 59f not being intended to allow creditors to come in and answer at any time, this being particularly true in view of the fact that judgment liens against the property of the bankrupt might become by lapse of more than four months invulnerable to attack in case the petition should be denied.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
247 F.—24

3. BANKRUPTCY ⬥⟶81(4)—"ACT OF BANKRUPTCY"—WHAT CONSTITUTES.

Under Bankr. Act, § 3a, subd. 3 (Comp. St. 1916, § 9587), declaring that acts of bankruptcy of a person shall consist of his having suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preferences, an involuntary petition in bankruptcy filed against a New York corporation, which alleged that the corporation had suffered and permitted a number of its creditors to obtain preferences through legal proceedings in form of judgments entered and docketed against it, and, upon which executions had been issued to the sheriff, who had levied upon the property of the corporation and threatened to sell the same because the corporation has not vacated or discharged such preferences, although more than five days have elapsed since the same were obtained, does not allege an act of bankruptcy, not showing advertisement of the property levied upon for execution, or that the day fixed for sale was not more than five days distant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

4. BANKRUPTCY ⬥⟶59—ACT OF BANKRUPTCY—EXECUTION SALE.

Under such section, where a judgment creditor delays more than four months in advertising or directing a sale under execution, no act of bankruptcy is committed, even though the judgment lien then becomes invulnerable to attack under the Bankruptcy Act.

5. BANKRUPTCY ⬥⟶84—PETITION.

Though an involuntary petition in bankruptcy against a corporation did not allege an act of bankruptcy, yet, where the corporation was in fact insolvent, it may by resolution confess its insolvency and inability to pay its debts, and declare its willingness to be adjudicated a bankrupt on that ground, and, if that be done, a new petition can be filed.

6. BANKRUPTCY ⬥⟶81(4)—COURTS OF BANKRUPTCY—JURISDICTION.

The jurisdiction of the bankruptcy court in involuntary bankruptcy proceedings is not general, but is limited to certain specified classes of cases, and the record must show that one or more of the specified acts of bankruptcy was committed, and, if the petition does not allege an act of bankruptcy, the court has no jurisdiction, and the proceedings are void.

In Bankruptcy. In the matter of the D. F. Herlehy Company, an alleged bankrupt. On motion of petitioning creditors to strike from the files the answer of the Lewis-Weller Manufacturing Company, a creditor. Motion sustained, but petition held insufficient.

Bronner & Ward, of Little Falls, N. Y., for petitioners.
Fred D. McIntosh, of Little Falls, N. Y., for answering creditor.

RAY, District Judge. July 17, 1917, three petitioning creditors filed a petition in involuntary bankruptcy against the D. F. Herlehy Company. That company has not answered the petition, or questioned its sufficiency in any way, or denied insolvency. On the petition and papers presented, showing necessity therefor, this court appointed a receiver of the property and estate of such alleged bankrupt, who qualified July 23, 1917, and took possession of the property and continued the business by authority of this court. Appraisers were duly appointed, the property appraised, and the inventory filed August 16,

1917. August 24, 1917, the alleged bankrupt filed its schedules in due form as required by law.

July 30, 1917, A. M. Mills, representing a creditor, Willcox, Watts & Co., filed an answer denying insolvency and the commission of any act of bankruptcy. Fred D. McIntosh, as attorney for the Lewis-Weller Manufacturing Company, the same creditor he now represents, filed a petition and obtained an order to show cause, returnable September 11, 1917, why the issue framed by the answer should not be tried or the petition in bankruptcy dismissed. Prior to the filing of such petition the said McIntosh, representing certain creditors of the said D. F. Herlehy Company, had brought suit against that company and obtained several judgments by default, which were duly docketed in Herkimer county, the residence of such company. Execution had been issued thereon and levies made before the petition in bankruptcy was filed. On the return and hearing of the said order to show cause, no objection was raised to the sufficiency of the petition in bankruptcy by said McIntosh, and the court ordered that the issue framed by such answer interposed by said Mills, and which had been referred to the referee in bankruptcy for trial, be proceeded with, that the receiver file an account, and that a meeting of creditors be called to consider an offer of composition before adjudication, which the alleged bankrupt alleged and represented it was desirous of making. To all this no objection was made by said McIntosh. A meeting of creditors was called later for such purpose, and a proposed composition offered in writing, to which objections were made. Thereupon October 3, 1917, said Mills, representing said creditor, Willcox, Watts & Co., withdrew the said answer interposed by him.

[1, 2] At the meeting to consider the offer of composition Mr. McIntosh, representing the said judgment creditors and a large number of other creditors who had no judgments, objected to the proposed composition.

October 22, 1917, said McIntosh, in behalf of the said Lewis-Weller Manufacturing Company, applied ex parte for an order permitting it to intervene in the proceeding and file an answer to the petition. The court signed such an order, which was duly filed and entered. It appears that such an answer had already been filed by Mr. McIntosh. No answer was served on the petitioning creditors or their attorneys, Bronner & Ward, nor were they served with a copy of such ex parte order.

October 29, 1917, the receiver applied on notice for an order to all creditors for authority to sell the personal property of the bankrupt, and an order to show cause was issued and served on all creditors, including those represented by Mr. McIntosh, and on the return day the order to sell prayed for was granted without objection, and the sale was made on notice and reported to the court and November 20, 1917, duly confirmed. The proceeds of sale are now in the hands of such receiver.

November 27, 1917, the alleged bankrupt filed an amended offer in such composition proceedings, and after a full hearing, December 26, 1917, the referee to whom the matter had been referred filed his report and certificate, finding that claims proved and allowed amount-

ed to $9,707.70; that 32 creditors, representing $5,584.41 of indebtedness, voted to accept the composition offered; and that 73 creditors, representing $4,123.29 of indebtedness, voted against. He therefore recommended 'that the composition offer be not confirmed. Mr. McIntosh represented and voted 70 of these claims of creditors who opposed. The entire estate of the alleged bankrupt will not exceed $4,500. It thus appears that the alleged bankrupt was and is insolvent. This is admitted. The answer interposed by Mr. McIntosh denies that any act of bankruptcy had been committed. The only act of bankruptcy alleged in the petition reads as follows:

"That D. F. Herlehy and Company heretofore and on or about the 28th day of June, 1917, and other dates since that time, suffered and permitted a number of its creditors to obtain a preference through legal proceedings in the form of judgments entered and docketed against it, upon which executions have been issued to the sheriff of Herkimer county, who has levied upon the property of said alleged bankrupt and threatens to sell the same, and because said alleged bankrupt has not vacated and discharged said preferences, although more than five days have elapsed since the same were obtained."

There has been no motion to vacate the receivership, and there was no objection to his continuing the business until the sale was made, and there was no objection to the sale, although all parties and creditors were duly notified. This would be a good point to stop legal proceedings, except such as are necessary to close the estate, pay legitimate and reasonable expenses, and divide the balance of the money on hand amongst the creditors. Should Mr. McIntosh succeed in defeating the bankruptcy proceedings, he will obtain payment in full for the judgment and execution creditors represented by him, to the detriment and disadvantage of about 60 general creditors, or creditors at large represented by him, as they have no judgments, or liens. If by amendment to the petition and proof the proceedings can be saved, this result will not follow necessarily, but considerable litigation is imminent. It is not wise in any legal proceeding that an attorney should represent a large number of clients, the interests and rights in the subject-matter of some of whom conflict. This court ought not to have granted the order ex parte permitting the Lewis-Weller Manufacturing Company to intervene and file an answer to the petition at the time it did, October 20, 1917. Notice ought to have been given Bronner & Ward. That creditor came into the proceeding and became an actual party as early as September 11, 1917, and did not answer or object to the sufficiency of the petition. When Mr. McIntosh, representing Lewis-Weller Manufacturing Company, applied to intervene and file an answer, his time to answer had long since expired. Section 18b of the Bankruptcy Act provides:

"The bankrupt, or any creditor, may appear and plead to the petition within five days after the return day, or within such further time as the court may allow."

The act originally fixed the time for pleading to the petition at ten days, but the amendment of 1903 reduced this to five days. The provisions of section 59f (Comp. St. 1916, § 9643) were not intended to allow creditors to come in and answer at any time. In re Mutual Mercantile Agency (D. C.) 111 Fed. 152, 6 Am. Bankr. Rep. 607.

When five weeks had elapsed after the filing of the petition, it has been held *not* an abuse of discretion to refuse permission to answer. First Natl. Bank of Belle Fourche (C. C. A. 8th Circuit) 152 Fed. 64, 81 C. C. A. 260, 11 Ann. Cas. 355, 18 Am. Bankr. Rep. 265.

[3, 4] This point is not of great or controlling materiality in this case, however, as it appears on the face of the papers that to give this court jurisdiction in this matter to make an order of adjudication the petition must be amended. As now framed, no act of bankruptcy is sufficiently alleged. Citizens' Banking Co. v. Ravenna Nat. Bank, 234 U. S. 360, 34 Sup. Ct. 806, 58 L. Ed. 1352; In re Rosenblatt (C. C. A. 2d Circuit) 193 Fed. 638, 113 C. C. A. 506, 28 Am. Bankr. Rep. 401; Matter of Rung Furniture Co. (C. C. A. 2d Circuit) 139 Fed. 526, 71 C. C. A. 342, 14 Am. Bankr. Rep. 12; In re Vastbinder (D. C.) 126 Fed. 417, 11 Am. Bankr. Rep. 118, 121; Folger v. Putnam (C. C. A. 9th Circuit) 28 Am. Bankr. Rep. 173; Collier on Bankruptcy (11th Ed.) 106, 112.

All three of the elements specified in subdivision 3 of section 3a of the Bankruptcy Act must be present to constitute the act of bankruptcy. The language is specific:

"Sec. 3. Acts of bankruptcy by a person shall consist of his having * * * (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

A reference to the decision of the Supreme Court in Citizens' Banking Company v. Ravenna National Bank, supra, makes it clear that the words "before a sale or final disposition of any property affected by such preference" make it possible that in New York, when judgment is obtained and docketed, whether execution is issued thereon or not, and time is allowed to run, and no sale is actually advertised or made thereunder, no matter if the property affected thereby is all the creditor has, and consists of real estate, and the judgment so docketed and thereby made a lien is greater than the value of such property, and more than four months elapse, so that the judgment becomes a fixed lien, which cannot be attacked in bankruptcy thereafter, that then the judgment creditor may sell and "sweep the deck," so to speak, as no act of bankruptcy was committed by the judgment creditor, as no sale was advertised, and if a sale thereafter constitutes an act of bankruptcy the four months has run, and the judgment must stand as a valid lien under the provisions of section 67 of the act.

Neither the judgment creditor nor any creditor at large can compel a sale under such a judgment, and all the creditor with such a judgment against an insolvent person has to do, in the case of real estate, is to obtain and docket his judgment and refuse or neglect to issue execution and sell. After the expiration of four months his lien becomes fixed and cannot be attacked. After that time he may advertise and sell with impunity, so far as other creditors are concerned, as the lien is more than four months old. But all this is of no consequence in, and is to one side of, the instant case. The decisions are that, to constitute an act of bankruptcy in the case of a judgment, execution issued thereon, and levy made on personal property, there

must be a sale of such property advertised, and the day fixed for the sale must be not more than five days distant, before an act of bankruptcy is committed. If no sale is advertised, the condition does not occur, and there is no act of bankruptcy.

[5, 6] In the instant case there is an allegation that execution had been issued and levy made, and that the judgment creditor threatens to sell, and that the judgments were obtained more than five days before the filing of the petition; but there is no allegation that a sale had been authorized or fixed for any time, or proposed for a day not five days distant, or for any time. Therefore on this petition this court has no jurisdiction to adjudicate the D. F. Herlehy Company a bankrupt. The petition may be amended by filing an amended petition within ten days, and if the truth be that no sale was advertised, inasmuch as the company is in fact bankrupt, it may by resolution confess its insolvency and inability to pay its debts, and declare its willingness to be adjudged a bankrupt on that ground. If that is done, a new petition can be filed. The defect in the petition has now been called to the attention of the court and cannot be ignored. The jurisdiction of the bankruptcy court in involuntary proceedings to adjudge a person, a firm, or a corporation a bankrupt is not general, but limited to certain specified classes of cases, and the record must show that some one or more of the specified acts of bankruptcy was committed. If this is not so, then the petition shows on its face that an act of bankruptcy was not committed, as the act alleged does not constitute an act of bankruptcy. See In re Hammond (D. C.) 163 Fed. 548; In re Pressed Steel, etc. (D. C.) 193 Fed. 811, 27 Am. Bankr. Rep. 44; 1 Remington on Bankruptcy (2d Ed.) 239. In such case, want of jurisdiction to make an adjudication affirmatively appears, and the proceedings will be void.

The ex parte order granting leave to file an answer will be vacated, on the ground no notice was given, but without prejudice to a new application. The answer served is stricken from the files.