## In re V. LOEWER'S GAMBRINUS BREWERY CO., Inc.

## FLYNN v. BREWERY MANAGEMENT CORPORATION et al.

### No. 203.

Circuit Court of Appeals, Second Circuit.

March 21, 1944.

Goldstein & Goldstein, of New York City (Louis W. Stotesbury, of New York City, Bennett E. Aron, of Brooklyn, N. Y., and Nathan H. Goldstein, of New York City, of counsel), for appellant Stotesbury, as trustee.

Kramer & Kaprow, of New York City (Samuel Kramer, David L. Weissman, and Sol O. Maltz, all of New York City, of counsel), for Brewery Management Corporation, purchaser-appellee.

Glass & Lynch, of New York City (Joseph Glass, Walter A. Lynch, and Leslie Kirsch, all of New York City, of counsel), for John L. Flynn, as trustee-appellee.

Winthrop, Stimson, Putnam & Roberts, of New York City (Thomas C. Fogarty and Donald H. Aiken, both of New York City;

of counsel), for Franklin Savings Bank, intervenor-appellee.

Finke & Jacobs, of New York City (David Jacobs, of New York City, of counsel), for debtor, amicus curiae.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On January 8, 1943, an involuntary petition in bankruptcy was filed against V. Loewer's Gambrinus Brewery Company, Inc., the above-named debtor. On February 24, 1943, the alleged bankrupt filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act and the court made an order approving the petition for reorganization and appointed John L. Flynn, trustee. The debtor had been engaged in the brewery business but its brewery was subject to a mortgage, which was under foreclosure. The property was also subject to arrears of real estate and water taxes aggregating more than $14,000 and to custodial and maintenance charges of approximately $120 per week. The trustee stated that there was also due the State of New York $10,000 for beverage taxes and there was also due $10,000 for Social Security taxes and for overtime wages. The owner of the bottling plant which the debtor had leased also had a claim of $50,000 and there were unpaid merchandise creditors amounting to $70,000 and note creditors for approximately $20,000. The accounts receivable were assigned to a factor and lacked substantial equity. There was no working capital on hand sufficient to operate the business and the creditors and stockholders were unwilling to furnish any. With the approach of warm weather the vats, kettles and other brewery machinery would deteriorate rapidly and lose substantially all their value, while both real and personal property would be absorbed by the mortgagee.

In view of the foregoing situation the trustee applied to the court for an order to sell the assets of the debtor on notice to creditors, stockholders and other parties having any interest. He reported that the business had been discontinued, that the liquor license had been surrendered and that, owing to conditions, the brewery, with its equipment, was a rapidly wasting asset. The correctness of this report permits of no question. On April 22, 1943, the court approved a sale by the trustee to Brewery Management Corporation at a price of $100,000 in cash, subject to the mortgage of $75,000. Pending the closing of title, the purchaser was to take possession of the brewery, for the purpose of operation, under a temporary lease at a rental equal to the amount of real estate taxes and interest on the mortgage during occupancy. The sale was not to include cash, accounts receivable or any claims against the officers or stockholders of the debtor, but was to embrace all other corporate assets. The order of sale was made upon a finding that the property sold was perishable. At the time the sale was authorized no plan of reorganization had been proposed and no appraisal of the assets had been had under Rule 9 of the bankruptcy rules.

The trustee of the Estate of Ida Loewer Dowling, deceased, who held a substantial minority interest in the stock of the debtor corporation, has appealed from the order of sale on the ground that in a Chapter X proceeding the court had no power to authorize a sale of virtually all the income-producing assets of the debtor, even though the assets were of a perishable nature, without the entry of an order that a plan of reorganization was impossible.

The petition for leave to sell the assets of the debtor alleged that:

"Petitioner has had meetings with the stockholders and creditors of the Debtor. None of them is able or willing to contribute any additional capital that would result in a feasible reorganization of the Debtor.

"* * * With the approach of warm weather the vats, kettles and other brewing machinery will, because of lack of use and refrigeration, deteriorate rapidly and lose substantially all of their value."

Upon the petition the trustee procured an order requiring all creditors, stockholders and other parties interested in the debtor's assets to show cause why such properties should not be sold for $90,000 in cash and notes, or any better offer which might be made. No answer was interposed controverting the trustee's allegations as to the perishable nature of the debtor's properties. Upon the return of the order to show cause three offers to purchase the brewery plant and equipment were made. The one by Brewery Management Corporation was the best and was favored by all the creditors who appeared as well as by a majority of the stockholders. No one has objected to

it except the trustee of the Ida Loewer Dowling Estate who only represented a minority of the stock interest. The stockholders were all in a position to benefit by the offer, for they are said also to be the stockholders of Loewer's Realty Company, which is one of the largest creditors of the debtor and owns the bottling plant adjacent to the brewery that is available for lease to the operator of the brewery.

We think that the order was for the benefit of all parties concerned and was well within the powers of the District Court.

■ The precise question is whether in a Chapter X proceeding a District Court has jurisdiction to order a sale of all or virtually all of the income-producing assets of a debtor, when such assets are perishable, without first making an order that a plan of reorganization is impossible.

Section 236(1) of the Bankruptcy Act, 11 U.S.C.A. § 636(1) provides as follows:

"If no plan is proposed within the time fixed or extended by the judge, or if no plan proposed is approved by the judge and no further time is granted for the proposal of a plan, or if no plan approved by the judge is accepted within the time fixed or extended by the judge, or if confirmation of the plan is refused, or if a confirmed plan is not consummated, the judge shall—

"(1) where the petition was filed under section 527 of this title, enter an order dismissing the proceeding under this chapter and directing that the bankruptcy be proceeded with pursuant to the provisions of this title."

Section 116 of the Bankruptcy Act, 11 U.S.C.A. § 516 provides:

"Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon him and the court—* * *

"(3) authorize a receiver or a trustee or a debtor in possession, upon such notice as the judge may prescribe and upon cause shown, to lease or sell any property of the debtor, whether real or personal, and upon such terms and conditions as the judge may approve."

■ The appellant lays great stress upon the fact that here the sale was of all income-producing property of the debtor and hence was likely to prevent the adoption of any plan of reorganization and to defeat the very purpose of the reorganization proceeding. But the disposition of the property could not be longer delayed without peril to all interests. The properties were wasting assets and Section 116(3) of the Chandler Act authorizes the sale of "any" of them. Not only was the sale authorized by Section 116(3) of the Act, but also by Section 115, 11 U.S.C.A. § 515, under which the court is given the powers it would have if it had appointed a receiver in equity, one of which is to sell perishable property. In re Rosenbaum Grain Corporation, 7 Cir., 83 F.2d 391; Hill v. Douglass, 9 Cir., 78 F.2d 851; In re Pedlow, 2 Cir., 209 F. 841. There is no requirement in the Chandler Act that the sale be in aid of a reorganization or that it await a liquidation in straight bankruptcy. Our decision in Frank v. Drinc-O-Matic, 136 F.2d 906, is authority for the order of sale appealed from unless the opinion of Justice Roberts in Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 498, stands in the way. But that opinion would not seem to have any bearing on the situation here. It merely states that a petition for reorganization where liquidation, and not a readjustment of the rights of creditors, was at the very outset the only possibility, should be dismissed, as not filed in good faith. The petition was attacked at the outset on the ground that it was not filed in good faith and the Supreme Court held that to institute a proceeding under Chapter X in a case where there was no chance of reorganization was a violation of the statute. The Supreme Court said (318 U.S. at page 622, 63 S.Ct. at page 814):

"Congress did not intend a Chapter X case to be turned into a liquidation proceeding at the outset, but intended the litigation to become a straight bankruptcy only after the failure to consummate a plan, and meant to limit the parties to their remedy in ordinary bankruptcy in all other cases."

■ In the case at bar it was not apparent when the petition was filed that the debtor had no chance of adjusting the claims of its creditors and of ultimately resuming the operation of its rehabilitated brewery. The court found that the petition was filed in good faith, and there was no appeal from its order to that effect. Under Section 149 of the Act, 11 U.S.C.A. § 549, such an order cannot be attacked for lack of jurisdiction.

750

Finally the appellant objects to the order appealed from because it was made without any appraisal. But Section 102 of the Bankruptcy Act, 11 U.S.C.A. § 502, expressly provides that an appraisal shall not be necessary in a Chapter X proceeding unless an order shall be entered directing that bankruptcy be proceeded with pursuant to Chapters I to VII inclusive, 11 U.S.C.A. §§ 1–112. In other words, Section 102 exempts sales in Chapter X proceedings from the necessity of the appraisal which is required in straight bankruptcy.

The order of sale is affirmed.