**In re HOTEL REALTY CO.**

No. B–6484a.

District Court, D. New Jersey.

Jan. 21, 1947.

William A. Moore, of Trenton, N. J., for creditor, Maxwell Abbell.

H. Collin Minton, Jr., of Trenton, N. J., for debtor.

Joseph Fishberg, of Trenton, N. J., independent trustee.

Eugene T. Urbaniak, of Trenton, N. J., for offerors.

FORMAN, District Judge.

The debtor has but one creditor who owns all of the obligations. He is Maxwell Abbell, Esq., and the obligations consisted of the following as of January 11, 1947:

| | |
|---|---:|
| First Mortgage | $ 280,000.00 |
| Second Mortgage | 517,000.00 |
| Non-Interest Bearing Notes to Fund Delinquent Interest | 219,207.39 |
| Total | $1,016,207.39 |

The debtor has outstanding $697,100 in shares of preferred stock with a par value of $100 each, whose holders proportionately own the outstanding 3,493 shares of common stock.

In July of 1946 the creditor was about to reduce to judgment and execution in the State court the debt represented by the non-interest bearing notes mentioned above when the debtor filed its petition herein, which was adjudged to have been filed in good faith and stayed the creditor's action.

Proceedings were taken toward the development of a plan for reorganization and on December 9, 1946, a plan was filed by the debtor, but when the same came on for hearing before the Special Master on January 8, 1947, it failed of further development. Accordingly the Special Master so reported and recommended that the debtor be liquidated in bankruptcy in accordance with § 236(2) of the Bankruptcy Act, 11 U. S.C.A. § 636(2).

The report and recommendation of the Special Master came on for hearing before the court on January 13, 1947, at which time the Trustees produced a new plan conceived only within 24 hours of the time of hearing. This plan proposes that an offer should be accepted to pay the full indebtedness including accrued interest due the creditor in cash, and a sum of $69,710, which would provide some equity for the stockholders.

Conditions of the said offer are as follows:

"Purchase for cash at par, with accrued interest, all obligations of Hotel Realty Company presently held by Maxwell Abbell, Creditor, same to be held by purchaser free of any previous commitments, if any, limiting the right to foreclose.

"Pay $69,710 to the Trustee of Hotel Realty Company in said Court for the con-

veyance by said Trustees, or by said Hotel Realty Company, or both, of all the assets of Hotel Realty Company, both real, personal and mixed, said assets comprising the Stacy-Trent Hotel, of the City of Trenton, located on the easterly side of Willow Street between West State Street on the front and Front Street in the rear, and the vacant lot adjoining the building on the Front Street side, including real estate, improvements, furniture, fixtures and equipment, and all personal property owned by Hotel Realty Company, the said transfer to include any cash on hand, exclusive of the amount herein agreed to be paid after payment of all fees, costs and administration expenses in connection with the proceedings in the United States District Court."

\*     \*     \*     \*     \*     \*

"Subject to Federal Court approval, same to be obtained at any time after the expiration of sixty days from the date hereof.

"There shall be no public offering for sale of the assets of Hotel Realty Company prior to Court action on the offer herewith submitted, it being understood, however, that any notice with respect to this offer, or any other like offer to interested parties, pursuant to Court order, shall not be considered public offering.

"Clear title in Hotel Realty Company of the real estate and improvements, and ownership of Hotel Realty Company of furnishings and fixtures substantially as evidenced by an examination of the premises, certain exceptions thereto being mutually recognized, such as the generating unit of the power plant, etc.

"There shall be no change in trusteeship prior to Court action upon the offer herein made."

A deposit of $5,000 to secure the offer accompanies it.

■ The proposed plan arrived at a time when the court had come to a consideration of converting the proceeding into a bankruptcy liquidation and it appeared to be nothing more than a proposal or bid to purchase the property of the debtor at virtually private sale and that liquidation in straight bankruptcy would furnish a more efficient and practical vehicle to encompass that purpose. However, the proposal reveals an of-fer to purchase not the title to the property from the Trustees subject to the liens, or free of them upon their payment out of the purchase price, but rather the securities held by the creditor, together with title from the Trustees. Apparently such form of purchase has value to the offerors. It is doubtful whether a liquidation sale of the property in straight bankruptcy would permit such a form of purchase. Since it is contemplated that all of the indebtedness of the creditor will be liquidated in full in cash he can have no veto over such a plan. Under it some equity is assured to the stockholders. Under such circumstances the court is bound to regard it as a plan of reorganization.

Much the same situation was considered in the case of Patent Cereals v. Flynn, 2 Cir., 1945, 149 F. 2d 711, wherein the court said:

"Where the petition for reorganization has been filed in good faith and the court has found such to be the case we think that it can make no difference whether a sale of the debtor's property has preceded or is made a part of the plan of reorganization. In either case if the plan finally proposed is fair and equitable it ought not to be necessary to dismiss the proceeding and proceed with straight bankruptcy." 149 F.2d at 712.

The petition in this case was held to have been filed in good faith and to the extent that this proposal develops payment in full in cash to the creditor and an equity for the stockholders it reflects an affirmance of that good faith. Therefore no order will be made for the liquidation of the debtor in bankruptcy at this time and we will give consideration to the plan as it was submitted.

It is to be noted that while the proposal would seem to permit an increased bid over and above that made by the offerors in the sum of $69,710, still it limits the invitation of such bids only to the "interested parties." This should include not only the parties to this litigation but such outsiders as the Trustees may interest in bidding. In fact it was intimated by the disinterested Trustee that there is likely to be at least one such party. Furthermore, a day certain should

be fixed when such bids should be submitted and definitively acted upon.

The court finds, also, that the amount deposited as security for the performance of the offer is inadequate. Having in mind the length of time necessary to mechanize the plan it hardly represents interest upon the principal amount involved. Arrangements should be made to supplement the deposit with an additional $10,000.

The foregoing and other matters looking toward the implementation of the plan should be formulated into an order and be presented by the disinterested Trustee. To that end the court will hear the parties on Wednesday, January 22, 1947, at 4 o'clock in the afternoon.